Coddington *v.* Idell.

---

AYRES CODDINGTON and others

*v.*

CHARLES W. IDELL and others.

1. Three persons were partners in the business of furnishing substitutes to fill the quota of a city on a military requisition, and received in payment certificates on which they were obliged to sue the city. One of the partners devoted considerable time and attention to the litigation.—*Held*, that, in the absence of an express agreement, he was not entitled to compensation from his partners for his services while so employed.

2. The costs and expenses of suit must be paid out of the partnership funds.

3. Interest must be allowed on advances made by either partner for the purposes of the suit.

Bill for account.   On final hearing on pleadings and proofs.

*Mr. R. V. Lindabury*, for complainants.

*Mr. G. Collins*, for defendant C. W. Idell.

THE CHANCELLOR.

The firm of Brokaw & Co. was, in the year 1865, engaged in the business of furnishing volunteers for the federal army, or, as it was termed, the bounty brokerage business. The firm was composed of Isaac Brokaw, Augustus Coddington and Elwood P. Wright. Augustus Coddington represented, also, Ayres Coddington and Sylvanus Coddington. The interests of the partners were as follows: Brokaw and Wright each one-third, and the Coddingtons one-third. In March, 1865, the firm entered into a copartnership with Charles W. Idell, to furnish volunteers for the city of Hoboken under a requisition of the federal government for men for the army. The profits were to be equally divided between Idell and Brokaw & Co. They furnished twenty-four volunteers, and received for each man a certificate which entitled them to a bond of Hudson county for $400 and scrip of the city of Hoboken for $350.

On the 13th of April, 1865, Idell received the certificates for the benefit of himself and his copartners, in order to obtain bonds and scrip for them. He soon obtained the bonds, which he converted into cash, paying a discount thereon. Of the amount which he received for them, $8,192, he paid to Brokaw & Co. $8,000 in a few days after he received the money. The city of Hoboken refused to issue the scrip, and it became necessary to institute and conduct through the supreme court and the court of errors and appeals, certain litigations to compel payment of the money due on the certificates. An action was brought by the holders of certificates on one or more of them, as a test suit. It resulted adversely to the city, but the city refused to

regard it as conclusive of the controversy. Suit was subsequently brought on all the remaining certificates—that course being necessary in order to prevent the claims from being barred by the statute of limitations—and one of those suits was prosecuted to judgment against the city, and thereupon, in 1875, payment of the money due on all the certificates was obtained.

Idell had been appointed, in the beginning of the litigations, to represent the interest of himself and his copartners in them, and the test suits were conducted on common account and at an expense which was, according to the agreement between the holders of the certificates, to be borne by them ratably. Idell contributed nothing towards the expense of obtaining the men in respect to whom the certificates were issued to him and his copartners. Brokaw & Co. furnished all the money, but the Coddingtons furnished all the capital to that firm. Idell paid to Brokaw & Co., on account, in April, 1865, $8,000, as before mentioned, and, in the same month, he bought and paid for Brokaw's interest in the concern. In 1875 and 1876 he paid to the Coddingtons and Wright $4,700 on account of the money collected by him. Brokaw paid his copartners all the capital which, by the terms of the copartnership, they were entitled to receive from him.

The complainants file their bill for an account and payment of the amount due them from Idell. He, by his answer, claims compensation for his services in attending to the litigations, and that he is entitled to retain the ratable proportion of the copartnership of the expenses of the litigations. They insist that they are entitled to interest on the unpaid balance of their capital; that Idell is not entitled to retain, out of the money received by him, anything on account of the expenses of the litigations, nor any compensation for his services therein, and that he should account to the Coddingtons for certain money which he paid to Wright on account of his interest in the copartnership funds after notice given to him by the Coddingtons not

to pay any of the partnership money to Wright; they alleging as the reason, that the latter had received all that he was entitled to out of the copartnership funds. They also insist that Idell ought not to be allowed the discount paid by him in converting the county bonds into cash. The proof is that he converted the bonds into cash at the market rate, and he swears that he was authorized by his copartners to do so. It does not appear that there was any complaint of his action. It seems to have been judicious.

Litigation to obtain the money due from the city was absolutely necessary. There was no agreement that Idell should bear the whole of that part of the expense which was fairly chargeable against the certificates which belonged to him and Brokaw & Co. His copartners should bear their fair share of it. He undoubtedly took charge of their interest and his own in the litigations, and he swears that he gave much time to it. While he probably rendered valuable service in the collection of the money due to his firm from the city, there does not appear to have been any agreement on the part of the other members of the firm that he should be compensated by them for it. He was, of course, acting in his own interest, as well as theirs. He did not seek the co-operation of any of them with him in the litigations, although he at one time requested an advance of money on account of expenses, which he obtained. For aught that appears, they would have been willing to take their full share of the burden of the litigations, and would have given their time and attention to it, if necessary. He never, until the filing of his answer in this cause, made any claim for compensation, though he on several occasions, since the money from the city came to his hands, declared his readiness to settle with his copartners. Nor did he, in his statements of account, at any time claim compensation. The general rule is that a partner is not entitled, unless under some special agreement, to any compensation, commission or reward for his skill, labor or services while employed in the partnership business. *Story on Partnership,*

§§ 181, 185; *Beatty* v. *Wray*, 19 *Pa. St.* 516; *Collyer on Part-nership* 105. There was not, in the case in hand, any under-standing, on the part of any of the other members of the firm, that Idell was to receive compensation for his services in looking after the suits. Judging from his conduct, he him-self had no such understanding. There is nothing in the circumstances to take the case out of the general rule on the subject.

The legitimate share of the firm in the expenses of the litigations which Idell has paid, or for which he is liable, is properly chargeable against the fund. Although Augustus Coddington testifies that he never understood or agreed that Brokaw & Co. would pay any part of the costs, expenses or fees of the litigations, but always understood that Idell was to pay them, Idell swears that it was agreed that the firm would bear its proportion. Nor does there appear to be any reason for the supposition to which Augus-tus Coddington swears. He says he supposed that Idell would himself bear the expenses of the litigations. He admits that the course adopted was the subject of conversa-tion between him and Wright and Idell. He says he talked with them, at some of the interviews spoken of by Idell, about the bringing of the suits, and that it was before the suits were instituted that those conversations took place.

Idell swears that he was expressly directed to represent the firm in the litigations, and that it was agreed between him and his partners and the other persons who held certifi-cates, that the firm should pay its due proportion of the expenses.

The course which was taken for the collection of the claims against the city, seems to have been the most judi-cious and economical that could have been adopted. No reason is given or appears why Idell should bear the whole burden of the firm's share of litigations undertaken and pursued at the instance of his copartners as well as himself, and in his and their joint interest, and absolutely necessary to the salvation of that interest. The business of the

copartnership, except for liquidation and settlement between the partners, ended with the furnishing of the twenty-five men for Hoboken. Thenceforward there remained nothing to be done but to collect the money due the firm, pay its debts, and divide its remaining assets among its members.

A part of the capital contributed by the Coddingtons remained unpaid to them up to the time when the money was recovered from the city of Hoboken. It is admitted that they are entitled to interest upon it. The recovery from the city of Hoboken was, of course, with interest. Idell and the Coddingtons are entitled to interest on any advances made by them respectively, to the firm, for the purposes of the suits.

The evidence in the cause is, that the Coddingtons gave notice to Idell not to pay Wright any more of the partnership money, and, on the other hand, Wright gave to Idell the like notice as to them. He and they each declared that the other or others had received from the partnership funds more than was his or their due, and that there was nothing more due him or them. According to the testimony of Ayres and Augustus Coddington as to the time when the notice was given by them, Idell appears to have paid to Wright $450 after he received notice not to pay him any more money. According to his own testimony, he paid only $200 after receiving such notice. There is no evidence that Wright had, or yet has, received the full amount of his interest in the concern. He denies it in his answer, and there is no proof on the subject. Nor does it appear that there is any lack of pecuniary ability to account on the part of any of the partners. The subject of the payment after notice is probably of no importance in the cause, and hence was not discussed on the hearing.

There will be an account.